UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY MIKE DROGITIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY BERRYHILL,<br><br>　　　　Defendant. | Case No. 18-cv-02506-SVK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 15, 17 |

Plaintiff Jerry Mike Drogitis appeals a final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff challenges the Administrative Law Judge's ("ALJ") weighing of the medical evidence and evaluation of Plaintiff's credibility. Before the Court are the parties' motions for summary judgment. See Plaintiff's Motion for Summary Judgment, ECF 15 ("Pl. MSJ"); Defendant's Cross-Motion for Summary Judgment, ECF 17 ("Def. MSJ"). Having considered the parties' motions for summary judgment,[1] the relevant law, and the record in this case, the Court finds that the ALJ failed to properly evaluate both the medical evidence and Plaintiff's credibility. The Court therefore **GRANTS** Plaintiff's motion for summary judgment, **DENIES** Defendant's cross-motion for summary judgment, and **REMANDS** this case for further proceedings.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff seeks disability benefits for the period beginning January 1, 2012. ECF 13 (Administrative Record ("AR")) at 175. At the alleged onset date, Plaintiff was 40 years old. *Id*. Plaintiff is a high school graduate. AR 34. On the alleged onset date, Plaintiff worked as a shoe

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

salesperson at a sporting goods store. AR 35. Plaintiff reported past relevant work as a ticket seller, snack bar attendant, sales clerk, and video store sales clerk. AR 35, 180, 195-202.

The following portions of the medical record are relevant to Plaintiff's arguments on appeal. Plaintiff was seen at Kaiser Permanente for complaints of low back pain as early as September 2011. AR 264. Plaintiff stated he had a history of spondylolisthesis in the lumbar spine. AR 187, 265. A March 2012 x-ray showed spondylolisthesis and arthritis. AR 288. Physical therapy was recommended. *Id.* Plaintiff was given a modified work status from March 20, 2012 to April 17, 2012, stating that he could frequently lift 0-10 pounds, occasionally lift 11-25 pounds, and never lift over 25 pounds. AR 444. In May 2012, Plaintiff reported that his back was "doing fine" and stated that "physical therapy is helping him." AR 466.

From 2013 to 2014, Plaintiff received chiropractic treatment. AR 626-646.

In June 2015, Plaintiff was seen at Kaiser for complaints of recurrent back pain. AR 712. A June 3, 2015 x-ray showed anterolisthesis and moderate to severe disc degeneration. AR 728. An MRI conducted on June 15, 2015 found that Plaintiff had multilevel degenerative spondylosis. AR 740.

On June 9, 2015, Dr. Joseph Kwok examined Plaintiff and stated, after reviewing the films, that Plaintiff had some degenerative joint disease along the left L5 nerve root. AR 744. Plaintiff declined an injection to his back. AR 745.

In October 2015, Plaintiff again engaged in physical therapy. AR 769.

In January 2016, Plaintiff received an injection to his back. AF 803. The injection gave Plaintiff close to 80 percent relief for a few months, until he injured himself when trying to pull some wire off a wall. AR 812-813.

As for Plaintiff's activities of daily living, he stated that he could drive for brief periods. AR 39, 190. He went shopping several times a week. AR 39, 187, 190. He took out the garbage on a weekly basis. AR 189. Plaintiff took a dance class. AR 637, 645. He went outside six days a week. AR 190. He regularly went to church, the movie theatre, and malls. AR 191. He reported that he ran and walked for recreation. AR 39, 645-46, 767. At one point, he reported that he could walk six plus miles and that he was able to walk two miles two times per week. AR 645-

46. He went on a trip to Greece in the fall of 2015, but his back was sore and painful for a day. AR 39-40. Plaintiff reported that he had no problems with personal care. AR 188-189.

Plaintiff filed a claim for disability benefits on September 11, 2013. See AR 54, 127-133. On January 13, 2014, Plaintiff underwent an examination by Dr. Calvin Pon in connection with his claim for disability benefits. AR 319-321. Dr. Pon opined that Plaintiff could perform light work except that he was limited to occasional stooping. AR 321. On February 13, 2014, Dr. Lucy Sauer reviewed Plaintiff's file and concluded that he could perform light work without postural or environmental limitations. AR 61-62. On August 19, 2014, Dr. Alicia Blando agreed upon reconsideration with Dr. Sauer's assessment. AR 76.

Plaintiff's claim was denied initially and upon reconsideration. AR 63, 78. The ALJ held an initial hearing on March 15, 2016, at which Plaintiff testified and was represented by an attorney. AR 30-53. A vocational expert also testified. AR 44-52. On May 13, 2016, the ALJ issued a decision finding that Plaintiff was not disabled. AR 12-29. The Appeals Council denied Plaintiff's request for review of the ALJ's determination. AR 1-6.

Following the decision of the Appeals Council, Plaintiff filed a timely civil action in this Court. See ECF 1; AR 2. All parties have consented to the jurisdiction of a magistrate judge. ECF 8, 9.

## II. LEGAL STANDARDS

### A. Standard of Review

This Court has the authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The Court is "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

### B. Standard for Eligibility for Disability Benefits

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

#### 1. The Five-Step Disability Inquiry

To determine whether a claimant is disabled, the ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial and gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity (i.e., what a claimant can still do despite her limitations), the claimant can still do her past relevant work; and (5) whether the claimant can make an adjustment to other work. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 and n.5 (9th Cir. 2014). The burden of proof is on the claimant at steps 1 through 4 but shifts to the Commissioner at step 5.

*Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

**III.    DISCUSSION**

The ALJ employed the established five-step framework for evaluation of disability claims and found as follows:

**Step 1:** The ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset date of January 1, 2012 through his date last insured of September 30, 2015. AR 17.

**Step 2:** The ALJ concluded that Plaintiff had degenerative disc disease of the lumbar spine with spondylolisthesis, a severe impairment under 20 C.F.R. 404.1520(c). *Id.*

**Step 3:** The ALJ held that Plaintiff did not have an impairment or combination of impairments that met one of the listings. AR 18.

**Step 4:** The ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b)[2] except he should be able to lift and carry 20 pounds occasionally and 10 pounds frequently; he can stand and walk for four hours in an eight-hour day; he can sit for six hours in an eight-hour day; and stooping should be limited to occasionally. AR 18.

**Step 5:** The ALJ found that Plaintiff was unable to perform past relevant work, but there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 23-24.

Plaintiff challenges the ALJ's evaluation of the medical opinion evidence regarding Plaintiff's limitations, as well as the ALJ's evaluation of Plaintiff's credibility. Pl. MSJ at 5-14.

**A.    The ALJ's Evaluation of the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by giving only "little weight" to the opinion of his

---

[2] 20 C.F.R. § 404.1567(b) provides: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

5

treating physician, Dr. Kwok. Pl. MSJ at 5-9.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, the opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician. *Ghanim*, 763 F.3d at 1160. Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2).

The ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the uncontradicted opinion of treating physicians. *Ghanim*, 763 F.3d at 1160; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that ALJ can reject uncontradicted treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his own interpretation thereof, and making findings") (internal quotation marks and citation omitted). Where contradicted, the opinions of treating physicians may be rejected only for "specific and legitimate reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1160. Here, the opinion of Plaintiff's treating physician, Dr. Kwok, concerning Plaintiff's residual functional capacity was contradicted by the opinions of one examining and two consulting physicians, who found few limitations, so the "specific and legitimate reasons" standard applies.

An ALJ need not accept a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Similarly, an inconsistency between the treating physician's opinion and his own clinical findings provides a specific and legitimate reason to discount the physician's opinion. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ gave clear and convincing reasons for rejecting treating physician's conclusion that the plaintiff was totally disabled where, among other things, the treating physician's total disability conclusion was contradicted by his own contemporaneous finding that the plaintiff was only temporarily disabled)).

On February 24, 2016, Plaintiff's treating physician, Dr. Kwok, completed a residual

functional capacity ("RFC") questionnaire pertaining to the period on or before September 30, 2015. AR 817-820. Dr. Kwok stated that Plaintiff had Grade 1 spondylolisthesis and facet mediated low back pain with a "fair" prognosis. AR 817. Dr. Kwok indicated that Plaintiff's experience of pain was occasionally severe enough to interfere with attention and concentration. AR 818. Dr. Kwok estimated that Plaintiff could walk four city blocks without rest or severe pain and could sit or stand one hour at a time. AR 818-19. Dr. Kwok also estimated that Plaintiff could sit about two hours in an eight-hour work day, could stand about four hours in an eight-hour work day, would need to walk for 10 minutes every 90 minutes of the day, and would need to take unscheduled 10-15-minute breaks approximately every two hours. AR 819. Dr. Kwok stated that Plaintiff needed a job that permits shifting positions at will from sitting, standing, or walking and would need to keep his legs elevated when sitting. *Id*. Dr. Kwok indicated that Plaintiff could frequently lift less than 10 pounds, occasionally lift 10-20 pounds, and never lift 50 pounds. AR 820. Dr. Kwok opined that Plaintiff could occasionally twist, stoop (bend), and crouch/squat, but only rarely climb ladders or stairs. *Id*. Finally, Dr. Kwok stated that Plaintiff's impairments were likely to produce "good days" and "bad days" and that he was likely to be absent from work as a result of his impairments or treatment about three days a month. *Id*. Dr. Kwok responded that the earliest date that these symptoms and limitations applied was June 3, 2015. *Id.*[3]

In giving "little weight" to Dr. Kwok's RFC opinion, the ALJ noted that Dr. Kwok's opinions concerning Plaintiff's limitations were "inconsistent with the treatment records from Kaiser and the medical assessments provided by the consultative physician and state agency medical consultants." AR 23. The ALJ also stated that Dr. Kwok's opinion was inconsistent "with findings on physical examinations, such as full and normal range of motion of the back, normal gait, normal heel and toe walking, full motor strength, intact sensation to the bilateral lower extremities, full reflexes, no tenderness of the lumbar spine and negative straight leg raising tests." *Id.*

Normally, the ALJ's identification of inconsistencies between the treating physician's

---

[3] The ALJ found, and Plaintiff does not challenge, that his date last insured was September 30, 2015. AR 17.

7

1 opinion and his own clinical findings provides a specific and legitimate reason to discount the
2 physician's opinion. *See Johnson*, 60 F.3d at 1433. However, Plaintiff faults the ALJ for citing
3 "general exhibit numbers (2F, 3F, 9F, 10F, 11F)" in this section of her decision, arguing that this
4 cite encompasses "most of the Kaiser records in general, 243 pages in total." Pl. MSJ at 6.

To meet her burden of providing specific and legitimate reasons supported by substantial evidence to discount the opinion of treating physician Dr. Kwok, the ALJ was required to set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Thomas*, 278 F.3d at 957. "'[B]road and vague' reasons do not suffice." *Klee v. Berryhill*, No. 17-cv-00697-DMR, 2018 WL 3956337, at *13 (N.D. Cal. Aug. 17, 2018) (quoting *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989)).

The Court agrees with Plaintiff that the ALJ did not adequately identify the physical examination findings upon which her decision to discount Dr. Kwok's opinion was based. In support of her conclusion, the ALJ offered only broad, general citations to the record (2F, 3F, 9F, 10F, and 11F) which total over 240 pages. Nor are specific pages in support of the ALJ's conclusions cited elsewhere such that the general citation might reasonably read with an implied "see above" or "see below" reference. Although there may be support within those hundreds of pages for the ALJ's statements that the physical examination findings were inconsistent with Dr. Kwok's RFC opinion, because the ALJ failed to cite particular entries in these voluminous medical records anywhere in the record, the Court is unable to conclude that the ALJ correctly weighed Dr. Kwok's opinion.

The Commissioner attempts to supply the information missing from the ALJ's analysis by citing particular portions of the medical records that support the ALJ's broad statement about inconsistent physical findings. Def. MSJ at 4. "While the Commissioner has proffered reasons why [the treating physician's] opinion could be discounted by the ALJ, these reasons should be made in the first instance by the ALJ on the record." *Wallace v. Apfel*, No. C 00-0376 SI, 2001 WL 253222, at *4 n.5 (N.D. Cal. Mar. 2, 2001). The ALJ did not cite to the entries identified by the Commissioner in support of her statement about physical findings, and therefore as discussed above the ALJ has failed to meet the burden of providing "specific and legitimate reasons"

8

supported by substantial evidence to discount Dr. Kwok's RFC opinion. This error requires reversal and remand of the ALJ's decision for proper evaluation of the medical opinions under the applicable legal standard.

### B. The ALJ's Credibility Finding

The ALJ also found that Plaintiff's statements concerning the "intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." AR 19. Plaintiff argues that the ALJ failed to present clear and convincing reasons for rejecting Plaintiff's symptom testimony. Pl. MSJ at 9-14.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ghanim*, 763 F.3d at 1163 (internal quotation marks and citation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Id*. (internal quotation marks and citation omitted). General findings are insufficient; rather, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. Factors the ALJ may consider in making an adverse credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id*. at 958-59.

Here, the ALJ determined that Plaintiff's statements as to intensity, persistence, and limiting effects of his impairments were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." See AR 19. In support of this statement, the ALJ first cited numerous, specific statements by the Plaintiff regarding his

9

activities, treatments and improved conditions, each supported by specific page references to the record. (AR 20, paras. 1-4). Yet when the ALJ turned to contrast Plaintiff's allegations with her holding that "findings on physical examination were generally mild" (AR 20), the reference to examination findings was unfortunately broad without detail, citing only to "Ex. 2F, 9F; 10F; 11F." AR 20 (para. 6). Even when citing examination findings as partially supporting Plaintiff's allegations, the ALJ again used only broad, general citations, "2F, 9F, 10F, 11F, 13F." AR 22. As explained above, the exhibits cited by the ALJ comprise hundreds of pages of medical records, many on issues unrelated to Plaintiff's back pain. The ALJ also stated that Plaintiff's allegations were inconsistent with medical opinions that show Plaintiff is functional in spite of his condition. AR 21. This conclusion was based in part on the ALJ's decision to give Dr. Kwok's RFC opinion "little weight" (AR 23), which as discussed above was similarly not adequately supported by "specific and legitimate reasons."

Thus, critical portions of the ALJ's credibility analysis were tied to her evaluation of the medical evidence, which the Court has already concluded was in error. The Court notes that the ALJ's failure to support her findings with specific page citations to the record is not simply a matter of form over substance. Such specificity is a prerequisite to confirming that the ALJ's conclusions are supported by substantial evidence, particularly in light of the state of the record in this case. Under these circumstances, on remand the ALJ must reevaluate the credibility determination upon reevaluation of the medical evidence. *See Klee*, 2018 WL 3956337 at *17.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** Defendant's cross-motion for summary judgment, and **REMANDS** this case for further proceedings.

**SO ORDERED.**

Dated: February 21, 2019

SUSAN VAN KEULEN
United States Magistrate Judge